STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

MELINDA L. CARDENAS OWENS

VERSUS

KEVIN R. OWENS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 85,538, DIV. A
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

                                                            **AFFIRMED.**

**Elvin Clemence Fontenot, Jr.**
**110 East Texas Street**
**Leesville, LA 71446**
**Telephone: (337) 239-2684**
**COUNSEL FOR:**
  **Plaintiff/Appellee – Melinda L. Cardenas Owens**

**Scott Westerchil**
**301 South 3rd Street**
**Leesville, LA 71446**
**Telephone: (337) 238-0019**
**COUNSEL FOR:**
  **Defendant/Appellant – Kevin R. Owens**

**THIBODEAUX, Chief Judge.**

The defendant, Kevin R. Owens, appeals the judgment granting the request of the plaintiff, Melinda L. Cardenas Owens Spears, to relocate the parties' daughter to Johnson City, Tennessee. Finding no abuse of discretion in this relocation dispute, we affirm the judgment of the trial court.

I.

## ISSUE

We must decide whether the trial court abused its discretion or manifestly erred in granting the mother's request to relocate the minor child to Tennessee and in modifying the father's visitation accordingly.

II.

## FACTS AND PROCEDURAL HISTORY

Kallee Owens is the daughter of Kevin Owens and Melinda Owens Spears. After their divorce, Melinda married Dr. Thomas Spears and sought relocation of Kallee to Johnson City, Tennessee from Hornbeck, Louisiana. The trial court granted the request.

We adopt the well-written reasons of the trial court in our discussion below of the further particulars of the case.

III.

## STANDARD OF REVIEW

A trial court's determination in a relocation dispute is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion. [*Curole v. Curole*, 02-1891 (La.10/15/02), 828 So.2d 1094].

Further, a reviewing court may not set aside a trial court's factual findings in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two-tiered test must be applied in order to reverse the trial court's findings: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's findings, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *Richardson v. Richardson*, 09-609 (La.App. 3 Cir. 11/18/09), 25 So.3d 203, citing *Mart v. Hill*, 505 So.2d 1120 (La.1987). On review, if the trial court's findings are reasonable based upon the entire record, the reviewing court may not reverse even if it is convinced that had it been sitting as the trier of fact it would have weighed the evidence differently. *Id.*

*Perez v. Perez*, 11-537, p. 6 (La.App. 3 Cir. 2/29/12), 85 So.3d 273, 278, *writ denied*, 12-743 (La. 5/18/12), 89 So.3d 1195.

The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses but also upon the proper allocation of trial and appellate functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

## IV.

## LAW AND DISCUSSION

Mr. Owens contends that the trial court manifestly erred in granting the relocation request of Mrs. Spears. We disagree. Mrs. Spears met her burdens of proving by a preponderance of the evidence that the relocation is being done in good faith and is in the best interest of the parties' daughter. Additionally, the modification of the visitation/custody arrangement is in the best interest of the child.

The Title 9 child relocation statutes are La.R.S. 9:355.1 to 9:355.19. "The person proposing relocation has the burden of proof that the proposed relocation is [1] made in good faith and is [2] in the best interest of the child." La.R.S. 9:355.10. "Although the person proposing relocation has the burden to prove that the relocation attempt is made both in good faith and in the best interest of the child, there is no presumption in favor of or against relocation of the child's residence." La.R.S. 9:355.10, Comment (a) – 2012 Revision. "If an objection to the relocation is made in accordance with R.S. 9:355.7, the person wishing to relocate must prove by a preponderance of the evidence, on contradictory hearing, that relocation meets the good faith and best interest standards." *Id.*

Under La.R.S. 9:355.14, the court is given twelve factors to consider in determining whether the requested relocation is in the best interest of the child:

> A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> (1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.
>
> (3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

3

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.

As with the factors in the custody statute, La.Civ.Code art. 134,[1] the court "need not make a factual finding on every factor." La.R.S. 9:355.14,

---

[1]The court shall consider all relevant factors in determining the best interest of the child. Such factors *may* include:

Comment (a)–2012 Revision. Nor does the relocation statute "direct the court to give preferential consideration to certain factors." *Curole*, 828 So.2d at 1097.

Here, the trial court's well-written reasons accurately reflect the facts and accounts in the record; they address the factors of La.R.S. 9:355.14; and the narrative is one upon which we need not improve:

> The mother, Melinda Owens, now Spears, hereinafter referred to as Spears, and the father, Kevin Owens, hereinafter referred to as Owens, are the parents of Kallee, age 7. The parents divorced December 17, 2012. In a prior judgment on rule, on December 19, 2011, the parents agreed to joint custody, designating the other as domiciliary parent. The father obtained physical custody on the days he was off of work as an offshore oil

---

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

La.Civ.Code art. 134 (emphasis added).

worker. Essentially this amounted to twelve days each month. He worked shifts of fourteen days on and fourteen days off. He used two of the fourteen days off for travel to and from his required work location.

Both parents lived in Vernon Parish. The child has resided here since birth in the same residence. Since the separation the physical custody by the father has been exercised at the residence of his parents where he also resides.

All of the grandparents reside in the same area of Hornbeck, Louisiana in Vernon Parish. The child has a close relationship with relatives on both sides of the family.

The mother has been the primary care provider for the child since birth. During the marriage, the father provided some care when he was in. Since the separation he has provided care for the ten to twelve days he is not working each month.

The child has a close relationship with each parent. The mother has had more involvement with the child regarding educational, religious, and social activities.

The father has provided for and met all of his financial obligations to the child. He has not been held in contempt for any reason.

Each parent remained single until August 29, 2013 when the mother remarried. She married Dr. Thomas Spears, a dentist at Bayne Jones Army Community Hospital at Ft. Polk, Louisiana. She had a relationship with Dr. Spears for quite some time prior to their marriage. The mother was employed there as an oral surgeon assistant. They were both civil service employees.

Due to recent cuts in financial budgeting from the Federal government, the hospital was required to temporarily cut back on hours worked by employees. This affected both the mother and Dr. Spears. As a result, Dr. Spears sought a transfer to the Veteran's Administration facility in Johnson City, Tennessee and was able to obtain employment there. His job there has resulted in an increase in income. He is also about two hours away from his parents and other relatives.

Mrs. Spears, the mother, has indicated in the notice of relocation that a primary reason she wants to relocate is to seek more secure employment with the V.A., however, in her testimony she indicated that was not a major factor. As a result of her new husband's increase in income, she may have the opportunity to become a stay at home parent.

The home in Tennessee is very adequate and appears to be in an upper middle class area. The school in the district is apparently of a good quality, however, the Court is not convinced that it is of a significant difference from those here in Vernon Parish. The area around the new location provides greater opportunities than Vernon Parish for cultural and educational experiences for the child.

As stated above, the physical custody arrangement has worked well. The mother has not sought to thwart the relationship of the child with the father. There have been some problems recently about the number of days the father had the child, however, that started about the same time the relocation issue arose. Prior to that there were no issues. The mother appears to be willing to continue to foster a relationship between the child and father.

The child is of a young age, however, she is genuinely excited about the relocation and the opportunity to make new friends. Of course, she is saddened by the prospect of not seeing her father and other relatives as frequently as she has if she does move. That is over[come] by the very strong bond between the mother and the child. The Court feels the child will be able to adapt without much difficulty to her new surroundings.

The Court cannot conclude that the proposed relocation would have any negative impact on the child and her development, physically, educationally, or emotionally.

One of the requirements that the Court must consider in this relocation case is whether the mother is seeking to relocate in good faith. The Court is convinced that the reason she is seeking this move is to move on with her life, post-divorce, with her new husband. As noted above, his reasons for relocating were legitimate and for good reasons. The Court is unable to find that

7

any proof has been presented to indicate this move is being made for any other reason, particularly to deny reasonable access of the father with his child. Her reasons are in good faith.

The Court, after reviewing and considering the factors in R.S. 9:355.14 and for the reasons previously stated finds the proposed relocation by the mother is in good faith and in the best interest of the child. The proposed relocation is approved.

Under La.R.S. 9:355.14(1), the quality and duration of Kallee's involvement with her mother as the primary caregiver has been close, constant, and loving since birth. Though she has a close relationship with her father, his daily presence with Kallee was less than half of the mother's involvement during the marriage because of his offshore job. Since the divorce, the father has lived with his parents, and while this arrangement has provided an opportunity for Kallee to see more of her extended family, the one-on-one time for father and child has been further reduced. Because of travel time, he sometimes sees Kallee only ten days a month. Under La.R.S. 9:355.14(9), however, the father has met his financial support obligations to Kallee, and he has indicated his plans to buy a double-wide modular home for them.

The impact of the move to Tennessee and the emotional and quality-of-life changes resulting from the relocation, pursuant to La.R.S. 9:355.14(2) and (6), are positive and support the relocation. The schools are reportedly good; the Spears already have a nice house and neighborhood for Kallee, and she is enjoying diverse cultural experiences. The exhibits contain numerous pictures of family outings with Kallee, her mother, and her new stepfather that depict a strong bond between a genuinely happy threesome enjoying the area and each other. Kallee indicated that Dr. Spears, whom she calls "Big Papa," is funny and likes to do silly

things with her.  Dr. Spears testified that Kallee loves magic and stories; thus, they have magic shows and he reads her a lot of stories, in addition to going to movies and parks.  The exhibits contain numerous crayon notes and pictures that confirm a creative and loving relationship between Kallee and Dr. Spears.  There are also pictures showing a loving relationship between Kallee and her father.

Under La.R.S. 9:355.14(3) and (5), the mother appears more willing than the father to foster a relationship between Kallee and the other parent.  The father has openly disparaged the new marriage in his brief to this court, which indicates an intolerant and negative outlook for fostering Kallee's relationship with her mother.  While the twelve-hour driving distance created by the relocation will decrease the frequency of the father-child visitation during the school year, the longer summer visits will allow Mr. Owens and his family members extended opportunities to maintain a quality relationship with Kallee.  Further, there is an airport within fifteen minutes of Johnson City, and Dr. Spears testified that he would assist and facilitate the father and child visitation.  Dr. Spears is from a nearby area and has family less than two hours away.

Mr. Owens points out Dr. Spears's prescription addiction, which we will address as it falls under La.R.S. 9:355.14(11).  Dr. Spears candidly testified that he was being treated with the prescription drug, Xanax, and that he became addicted to it and underwent treatment around 2003, pursuant to the Board of Dentistry requirements.  He stated that, after four months of inpatient care, he attended group sessions, completed the program around 2004, and that he currently takes no medication except for hypertension.  Under the statute, there is no evidence of a severe addiction, and the rehabilitation ten years ago was apparently successful since Dr. Spears, a medical professional, passed the federal

9

government's stringent background check before being offered the new position in Tennessee.

As for Kallee's views on the relocation under La.R.S. 9:355.14(4), the trial judge interviewed her privately in chambers and has accurately summarized the transcription of the interview. Kallee clearly loves both of her parents but also is clearly looking forward to her new future in Tennessee with positive anticipation. The record further indicates that, pursuant to La.R.S. 9:355.14(7) and (8), the relocation to Tennessee was requested in good faith and is based upon occurrences in the job market for the mother and her new husband, who met through their employment. The changes indicate a positive outcome for Kallee. Dr. Spears testified to an increase in income and benefits in Tennessee, and Kallee's mother anticipates not only better employment opportunities for herself eventually but also the possibility of being a stay-at-home parent for Kallee.

While Mr. Owens attempts to make an issue of Dr. Spears's age (forty-nine) compared to Kallee's mother's age (thirty-six), this issue is not covered by the statute, and the trial court did not find it an additional factor to include in its written analysis. We note that the age difference is not great; Dr. Spears does not have any children of his own; and the record indicates that there is already a special bond that benefits the child in this case. We find no abuse of discretion in the trial court's conclusions under La.R.S. 9:355.14 that the relocation is requested in good faith and that it is in the best interest of the child to grant it.

V.

## <u>CONCLUSION</u>

Based upon the foregoing, we affirm the judgment of the trial court and assess costs of this appeal to the defendant/appellant, Kevin R. Owens.

**AFFIRMED.**